Good morning, your honors. May it please the court, Robert Swain for the appellant, Erin Lovellette. Your honors, I'd like to address primarily the issue of the confrontation clause and how it relates to the use and admission of the business records through the 902.11 certificates. I realize this doesn't help Judge Gould, but I realize I did not have in the excerpt the actual certificates, and government counsel was kind enough to help me last night get the 902.11 certificates together. If I could approach and hand those to the clerk, I have four copies. And, of course, I apologize again to Judge Gould. That doesn't help him. That's no problem. The clerk will send me a copy. And I guess as an introductory point, I'd like to suggest that, you know, this is not some unimportant or secondary evidence. The government's case relied heavily, if not primarily, on documents. And so I think tellingly, the government doesn't suggest that if there was any error in admission of these, that it could be harmless because it went to the elements of the offense. It went to the whole government's theory in proving through the records that the credit union was federally insured, that the money actually was missing, the $100,000 at issue, and also the deposits made by Ms. Lovelett into accounts after the missing money. Now, it seems to me that the cases... I don't see a copy of the actual certificate of insurance. Did you not copy that? That's at the supplemental excerpt of record page 1410. Right. What I've tended to the court is the affidavits used, not all the documents that went with it, because those are in the supplemental ECR beginning at page 1410. I thought a case law said that those certificates themselves are admissible and they're self-authenticating. We had both the certificate and the testimony of the bank auditor that on the day of the loss that the credit union was insured, did we not? Well, the bank auditor was relying on the certificate. He didn't have any... Let's start with the yes or no answer to my question. Isn't that the state of the record that the jury had before it, both the certificate of insurance and it heard testimony from the auditor? Yes, but... Go ahead. But the witness relied on the certificate and the witness didn't have any personal knowledge about the testimony set forth within the certificate. Our case law says that the government could have gotten by with the certificate alone. Well, I think that... Well, I guess I'd say two things. One is that the certificate dated from 1971 when the credit union wasn't even in existence at that time. And number two, when the government relies on the affidavit in part, I think it's fair to challenge that... So is your argument if it was insured before, it wasn't insured later on the date of the theft? Is that what you're arguing? Well, I'm saying that it changed names. It changed somehow and transformed over the years. And so because some entity was insured in 1971, I think there was a basis at least for cross-examination for a witness who had actual knowledge of what happened between 1971... Well, you had the auditor there to cross-examine as to whether or not there was insurance in force on the date of the theft, did you not? Yes. And we had the original certificate of insurance when the credit union and its predecessor name was established. I mean, I hear an argument here, but that's an argument really that questions the weight that the jury should give to the proof that the government offered that the institution was insured on the date of the theft. I understand the court's point, and I guess what I would say is that it's the same 902.11 the government relied on, which is, in our view, testimonial in nature. But independent of that, the other records, which there were not other witnesses like there were on this certificate, for example... Counsel, could I ask you a question, please? Yes, Your Honor. About something you just said, I really am not grasping how the document itself, the certificate when it's prepared, would be viewed as testimonial, because usually something testimonial is prepared in anticipation of litigation or with that in mind. And these certificates, I think, are in no way prepared for that reason. They're there so the public knows the place is insured when it comes in to put in some money. Your Honor, I guess in terms of the FDIC, there's an argument to be made that that is true. What I'm talking about are the 902.11 certificates, which are testimonial in nature, which are specifically prepared for the purpose of trial. And the FDIC certificate was introduced, at least in part, by this affidavit reflected in Government's Exhibit 1A, where the regional director sets forth, in the form of an affidavit, facts that they want to prove at trial that seem to me to come directly within the definition of testimony. I've been hearing this argument for a long time. I can't think of anyone who's ever succeeded. You've got a published decision of U.S. v. Bellucci in 1993 that directly refutes the argument that you're making against a confrontation clause challenge. Well, I think the difference is that we've had some Supreme Court developments in Crawford, Melendrez, and Bullcoming that have put those cases in question. I mean, all the circuits that have looked at this, the government cited in their 28-J letter a case just from about a month ago, which the courts are saying, this is a new issue now. Yeah, there were cases before about these certificates. Even under Crawford, we have to find that the challenge testimony is testimonial. And that gets back to Judge Gould's question, that there's nothing testimonial about a certificate of insurance that reflects an event that occurred before the date of the theft. Well, can I move from that certificate to another one of the business records that I think explains that better? For example, 30A, which is the Certificate of Authenticity of Business Records. So it's a person who works for J.P. Morgan testifying that these records are the records from the business. Of course, it wasn't even J.P. Morgan at the time that these events occurred in 2002. I believe in that case it was Washington Mutual. And so that is testimonial nature. It's a person who's not in court, not subject to cross-examination, saying these records were collected and saying somebody else had personal knowledge of them. It doesn't affirm that the person who signs it says, I have personal knowledge that that person had personal knowledge. It's exactly the type of testimonial evidence. And these cases that have been looking at this issue in the last two years, the Out-of-Circuit cases the government has relied on, those cases still recognize, yeah, there is some testimonial aspect to these. So basically what you are now arguing to us is that in the face of settled case law, at least in this circuit, that a certificate of assurance is no longer a self-authenticating document, which is admissible without any foundational testimony whatsoever, that now you want us to say in light of Supreme Court precedent that you have to introduce the certificate with the witness from, in this case, the Federal Savings and Loan Insurance Corporation that authenticates a business record, a public record, that our case law says doesn't require authentication because it's not produced for testimony. Well, the government thought that it needed authentication because they prepared, had this affidavit prepared, testimonial in nature set forth in 1A. And it's not just the FDIC certificate. It's all these seven or eight affidavits that were prepared for the business records of the credit union, for the deposit slips of Ms. Lovelett throughout the year of 2002, school records from the nearby community college, phone records. So it's not just the FDIC certificate that is the problem here. The problem is all these 902.11 affidavits are testimonial in nature. But you had a witness. You had the auditor. You had a live witness that you could cross-examine about all of this. Well, only as to the FDIC. On the date of the theft. I mean, he certainly is competent to testify to the events surrounding that date, right? Wasn't he involved in auditing the loss? Right, but that's only as to that one record. There's all these other sets of records from various institutions, not from the credit union, that were authenticated through these certificates, affidavits, that were prepared for trial. It seems to me to meet the exact language in Melendrez. It says when it's testimonial, if it's prepared for trial, and it sets forth facts that the government wants to use at trial. The testimony that it set forth was we collected these types of records. They're kept in the normal course. The point is that you have to have the actual custodian of records, especially in a case where you're using a custodian for some successor bank. Not that we have a... Well, I mean, as I understand the 902.11 argument, what these Exhibits 1A and so on, what these exhibits are, are essentially a certification by the custodian of the record that in my record at my government agency is a certificate of insurance. And that's the whole purpose. In essence, it's to establish, I guess you'd call it, a chain of custody of the photocopy of the exhibit that's actually introduced at the trial. As to 1A, that's true. But as to the other affidavits, business records of private companies... ...that the certificate of insurance, number 68494, is effective for the period January 4, 71 through April 12, 2010. Well, that's the testimony of Jane, whatever the last name is that we can't read, who was not subject to... Let me see the certificate. Counsel, as I understand it, you're raising the evidence challenge also to the records of the deposits that appellant made in her bank, right? That's correct. It's a series of records. It's the records relating to the phone records. The appellant's phone records, to some degree, were admitted. There were two separate banks that appellant made deposits in that the records were certified through this affidavit under 902.11. So it's not just the FDIC. It's these other series of records that all went to the essential elements of the government's case. I have about a minute and a half time reserve. Thank you. All right. Good morning, Your Honors. May it please the Court, my name is Mark Conover, and together with my colleague, Eric Best, we represent the United States of America. I will be handling the government's argument here today. Trial co-counsel Eric Best will be handling anything difficult from the Court. You want to sit down now? That's right. Your Honors, I would like to begin with discussing the documents that were just presented to you, the 902 certificates of evidence. To be clear, these documents were never introduced into evidence. These documents were never given to the jury, and these documents were never part of jury deliberations. This Court has held, United States v. Hagege, that since these documents were not introduced, this Court need not consider whether or not their introduction would violate the confrontation clause. Well, I'm satisfied with regard to the certificate of insurance. I mean, it seems to me that with the certificate plus the testimony of the auditor, the government covered its bases. But what's your response with regard to the bank records, the phone records, without a custodial witness to authenticate them? Yes, Your Honor. The bank records, the phone records, the housing records, all fall within the core definition of what business records are. Records that were created for a different purpose other than for use in trial. These records, focusing on the business records related to bank records, were created for the entities carrying out of its duties as a bank, long before the trial was considered and for a completely separate purpose. They were kept in the ordinary course of business. They were kept in the ordinary course of business, and as such they are not testifying or testimonialized to any element of the offense. Crawford and Crawford's progeny have continually stated that business records are prime examples of documents that are not created for the purpose of trial, and therefore are not testimonial and do not implicate the confrontation clause. Similarly, Melendez-Diaz found business records to be another prime example of documents that do not implicate the confrontation clause because they are not testimonial in nature. They are not for the purpose of bearing testimony against the defendant. They were created for conducting the affairs of the business in its ordinary course of business. The 902 certificates... Counsel, do they have to be authenticated? These documents need to be authenticated, and they were authenticated by the 902.11 certificates which accompanied them. The 902.11 certificates are there for the sole purpose of establishing the factual predicate to meet the federal rules of evidence to authenticate them, and that is what the 902.11 certificates did, is authenticate that they were, in fact, as stated on each of these certificates, records that were made at the time of occurrence, that were kept in the regular conducted business activity, that the people that created them were under a duty to create them accurately. And so they have been properly authenticated by the 902.11 certificates, and the court so ruled by allowing their admission. Did you provide these documents and the certificates to defense counsel in advance of trial? We did. Okay, and did defense counsel indicate that he was going to challenge the admissibility? Defense counsel was very clear from the beginning that he would be challenging the admissibility of these documents. So why didn't you call a records custodian to address that objection? Because the Supreme Court in Crawford and his progeny, the Ninth Circuit in Hagege, has been very clear that a records custodian is not required to be called to establish that business records can be admitted. These business records do not bear testimony, are not testimonial, and as such the defense did not have a right to confront the records custodian. And he could have subpoenaed the custodian because he had their certificates in advance of trial. At any time in advance of trial or at trial, defendant had the opportunity to subpoena the records custodians to attack the credibility of the records custodians or the documents themselves. In fact, pre-trial they did subpoena someone from Wells Fargo to come before the court who did come, who they were able to cross-examine. So they were aware of the right to subpoena these witnesses and declined to do so. And it was the Wells Fargo accounts, the principal accounts, in which she deposited large sums of money after the fact? No, Your Honor. The large sums were deposited into Downey Savings, Washington Mutual. She had 10 different bank accounts over the course of that year period. Which brings me to the sufficiency of evidence argument for the court as well. The defendant in this case had multiple bank accounts where thousands of dollars in cash, over $50,000 of cash, were deposited into these accounts beginning just days after the theft. Witness testimony at trial showed that the defendant herself, the appellant, had access to cash box number 8, the cash box where the brick of $100,000 was stolen from. She had access because it was previously her box and she had access to the spare key. And the day of the theft, she had claimed to have left her keys at home so she could borrow keys from other employees who had access to that box. Not only did she have access to the cash, but she on a daily basis transported hundreds of thousands of dollars from the main vault to the ATM safe near her desk, large bundles of cash similar to the missing $100,000 bundle. On the day of the theft, she claimed to not have her keys, had her husband bring a backpack in that was placed directly next to the ATM safe where she was transporting hundreds of thousands of dollars. On that same day, she became angry and quit. She gave her two-week notice the same day the money went missing. And then when asked about what happened and why she made deposits of thousands of dollars in cash, often in $100 bills, she stated it was loan repayments from her sister. Her sister testified at trial and said, I never made any repayments to my sister. The evidence in this case was overwhelming and certainly sufficient to meet the requirements set out in United States v. Nevels. Never made any repayments or at most it was up to $1,000? I believe it was at most up to a few hundred dollars or $1,000. $100,000? That's correct, Your Honor. Okay. That's correct. Next, moving to the argument that relates to the government's, the court's refusal to give a missing evidence instruction. The court in this case was very careful to conduct two hearings. Both of those hearings were related to the missing evidence. And the court determined after conducting a factual inquiry of the witnesses that there was no bad faith on part of the government in having lost these questionnaires and that there was no prejudice to the appellant. In fact, the court found that these questionnaires were more likely to have been inculpatory rather than exculpatory and therefore there was no prejudice. Given the court's findings, it was completely within its discretion and not an abuse of discretion for it to have refused to give a jury instruction that would have been something to the contrary. If the court does not have any additional questions, we will submit on our argument. I have no questions. No questions. Thank you, Your Honor. Thank you, Your Honor. The government's recitation of the facts that they believe showed such strong evidence was predicated a lot on this documentary evidence. And the government itself says it established the factual predicate. These 90211s established the factual predicate. Your cross-examination of the Wells Fargo custodian, was the net result of that that the district court admitted the Wells Fargo bank records? Your Honor, I have to concede I was in trial counsel. I don't remember that aspect of the pretrial litigation. To make sure the record is clear, Your Honor, the Wells Fargo custodian was required to be brought in to discuss why the documents related to housing documents of a government witness had not been produced. Oh, it didn't have anything to do with her bank accounts at Wells Fargo? It did not have to do with banking accounts at Wells Fargo, Your Honor. All right. And finally, just to tell the court, post Melendrez there is not a case from this circuit that has looked at this novel issue on whether there is a tension between the Supreme Court mandates in Melendrez and Bullcoming that the confrontation clause trumps certain aspects of the evidence code. And this is one of the situations where there's testimonial-type evidence being brought in through these 90211 certificates that precludes cross-examination on these fundamental foundational facts. Do you agree that if we reject your characterization that these are testimonial records that even in the face of Crawford there's no confrontation clause violation? Well, I think that is the sum and substance of the argument. They are testimonial. The government at first was conflating the business records with the certificates, the affidavits laying the foundation. The issue isn't whether the business records are admissible. The issue is can they use these certificates without cross-examining the person who's setting foot. Look at the affidavits. They're testifying to facts that are not allowed to be challenged. That's a violation of the Sixth Amendment. Well, how do you explain the Supreme Court's reference to business records in Crawford when they're saying that, you know, we're not suggesting? Well, that goes to the business records. It doesn't go to these 90211 affidavits. And, in fact, we know from the government side of the dissent in Melendrez that the dissent said, wait a minute, this could preclude using these 90211. The damage comes not from shaking the veracity of the custodial witness but from the contents of the business records themselves. In your client's case, all these deposits that the bank records show she made over the year or so after the theft from unexplained sources other than theft of $100,000 from the credit union. Right, but it's essential to be able to cross-examine the foundational witnesses to see if, in fact, these were properly kept, if this was the nature of what they purport to be. Historically, that is what the cross-examination allows us to do. Thank you, Your Honors. Thank you. The matter is submitted. Thanks very much. Thank you, Your Honor. Thank you, Your Honor.
judges: Pregerson, Gould, Tallman